# EXHIBIT A

| | |
|---|---|
| RETURN DATE: MARCH 29, 2022 | SUPERIOR COURT |
| MARIA NERON | J.D. OF NEW HAVEN |
| VS. | AT HAMDEN |
| AMEDISYS HOLDING, L.L.C. | MARCH 3, 2022 |

## COMPLAINT

1. The Plaintiff in this matter, Maria Neron ("Plaintiff"), was at all times relevant to this Action a resident of Town of Hamden, State of Connecticut.

2. The Defendant, Amedisys Holding L.L.C., is a foreign limited liability company organized under the laws of the State of Louisiana, duly licensed to conduct business in the State of Connecticut, operating business at 12 Progress Drive, Suite 1, Shelton, Connecticut.

3. Plaintiff filed a timely administrative complaint against Defendant with the Connecticut Commission on Human Rights and Opportunities, and thereafter received a release of jurisdiction letter therefrom, a copy of which is appended hereto as Exhibit 1. This Action is brought within 90 days of receipt of said release of jurisdiction letter. As such, Plaintiff has exhausted all administrative remedies, and this Action is timely.

4. Defendant provides home health care services including personal and hospice care throughout the State of Connecticut.

5. On or around June 12, 2017, Defendant hired Plaintiff in the role of Director of Operations at its 1970 Whitney Avenue, Hamden, Connecticut, location. On or around January 1, 2020, in addition to her position as the Director of Operations, Plaintiff was also given the role of Administrator for all four of Defendant's Connecticut locations. On or around August 14, 2020, Plaintiff transferred to Defendant's location at 12 Progress

1

Drive, Suite 1, Shelton, Connecticut, following it closing its Hamden, Connecticut location. Plaintiff held the same position and general job duties with this transfer.

6. In or around October 2020, Defendant hired Mary Gleason, ("Gleason") as its Area Vice President of Operations. Plaintiff reported to and was supervised by Gleason from this date through her termination.

7. On or about the end of September 2020 or beginning of October 2020, Defendant hired Indy Edwards, ("Edwards"), as the Vice President of Operations of the Northeast region.

8. From the time of Plaintiff's date of hire through her termination, she worked without issue or discipline, receiving positive performance reviews and one or more pay raises.

9. Throughout the Plaintiff's employment with Defendant, all of Defendant's administrative and management employees in its organization were Caucasian, except for Plaintiff.

10. Shortly after Edwards was hired, she subjected the Plaintiff to a course of differential treatment because of her race and age, and because of her mother's disability.

11. Shortly after Edwards was hired, Edwards made threatening comments towards the Plaintiff, indicating that there was going to be significant change and stated, "there is a new chief in town."

12. Ms. Edwards met with Plaintiff and conveyed to Plaintiff that she was aware that Plaintiff was overworked and offered Plaintiff the position of Clinical Manager. At the same time, Edwards offered Plaintiff a Regional Manager position as an alternative. Both offered positions were a demotion. As such, Plaintiff conveyed to Edwards that she did

not wish to accept, stating: "no, why would I want a demotion", and declined the positions offered.

13. Shortly thereafter, Edwards called Plaintiff into another one-on-one meeting and stated to Plaintiff "so I humbled you" in reference to the meeting in which she had offered the alternative positions to Plaintiff. At the same time, Edwards stated to Plaintiff that her comment about the positions being a demotion was taken as offensive.

14. Plaintiff was the only employee requested to take a demotion, no other Caucasian employees were asked to change their position or accept a demotion.

15. As part of her role with Defendant, Plaintiff virtually met with her team every morning. In or around late October 2020, as the Plaintiff was in one of these meetings discussing referral sources, Edwards interrupted the meeting and rudely stated to the Plaintiff that she should not be talking about that subject matter.

16. This was said in a rude and demeaning manner in the presence of other employees. Ms. Edwards was very demeaning in the manner in which she spoke to the Plaintiff, and did not exhibit similar treatment to other Caucasian employees. Shortly thereafter, a number of Plaintiff's colleagues called Plaintiff to inquire if she was okay following this incident.

17. From the date of Edwards's date of hire through Plaintiff's termination, Edwards subjected the Plaintiff to differential treatment, was rude to her and spoke in a rude and demeaning manner. Same was not true of Edwards towards White employees.

18. In or around the beginning of November 2020, Plaintiff learned that her mother had been diagnosed with cancer over the phone while at work and in the presence of Edwards and Gleason.

3

19. After the phone call was over, Plaintiff specifically conveyed this to Edwards and Gleason, specifically that her mother was diagnosed with cancer. In response, Edwards stated, "that is terrible" and "that is a hard road ahead of you" implying that it will be difficult for the Plaintiff to handle.

20. At the same meeting, Plaintiff informed Gleason and Edwards that her mother would be moving from Florida to Connecticut as Plaintiff needed to handle her medical care and provide care for her mother.

21. Plaintiff's mother then moved to Connecticut on or around November 14, 2020.

22. On or around November 14, 2020, Defendant employee Tiffany [last name unknown] ("Tiffany"), was assigned as the nurse to attend a visit to assist a patient with an IV. Tiffany did not attend said appointment, stating that she fell asleep and that she did not hear her phone ringing when Plaintiff called to inquire as to where Tiffany was and have her attend appointment.

23. At this time, Plaintiff was in the area of the patient in Greenwich and Plaintiff stopped at the patient's home to put an IV extension on an already existing IV. This was not an official visit, just an effort to help the patient as it was needed, and Tiffany was unavailable.

24. Shortly after the November 14 incident, Plaintiff attended a morning meeting with the other staff members at which time this incident was raised. Plaintiff conveyed that she had stopped by the patient's home, as outlined above in paragraph 24, as Tiffany was nonresponsive to phone calls despite being scheduled to assist this patient. Defendant Scheduler Melissa [last name unknown] ("Melissa"), then categorized the visit

as an appointment to which she assigned to the Plaintiff, despite Plaintiff stating this was a "missed visit".

25. This was fraud and unethical, as it was not an official full medical visit. Instead, Plaintiff refused such an assignment and ordered that it be designated as a "missed visit." Plaintiff stated that this was not a medical visit but instead a "missed visit" because she only had helped the patient with a simple task and did not perform a full assessment, as would be required to qualify as a visit.

26. Visits that are classified as "missed visit" are reported to Defendant's management team and trends of missed visits are written up and discussed with the employee who is responsible for the missed visit trend. Missed visits interfere with the prescribed plan of care for the patients, and Defendant is unable to charge such missed visits to Medicare. Melissa and Defendant Office Manager Donna Hunt ("Hunt") insisted on categorizing this incident as an appearance when Plaintiff refused to accept such an assignment as it was improper / fraudulent / unethical to do so.

27. Tiffany was never disciplined for her involvement in this November 14 incident and for missing the medical visit for which she was the on-call nurse because she was sleeping.

28. One of Plaintiff's job duties was to review payroll after being completed by Hunt. In around the end of November 2020, Plaintiff sent Hunt an email that her time was incorrect and that she had not accounted for time that she was out of work. At the same time, Plaintiff notified Gleason of this discrepancy, however Plaintiff never received follow up regarding Hunt's behavior nor was Hunt disciplined.

29. In or around the end of November 2020, Plaintiff's mother began medical treatment out-of-state for which Plaintiff attended. Plaintiff was out of work for said appointments which she notified Edwards and Gleason for each instance.

30. Plaintiff had never missed time from work before while working for the Defendant.

31. In or around the first week of December 2020, Plaintiff inquired about FMLA leave and FMLA information from Hunt and Gleason.

32. Defendant verbally approved Plaintiff's request, and stated she needed to formally submit her application for FMLA leave. Plaintiff never received information on the application process or any other FMLA information from Defendant.

33. In early December 2020, Plaintiff's mother was going to undergo surgery for which the Plaintiff was required to miss time from work to attend. Plaintiff informed Defendant management of the need for time and inquired about FMLA paperwork that she needed to bring to her mother's December 14, 2020 appointment so that she could start the FMLA process.

34. On or around December 7, 2020, Plaintiff received a call from Edwards who stated, "this is the part of the job I do not like…I have to suspend you" for "the day (referring to the November 14, 2020 incident) you went to a patient's house and connected a connector to the IV tubing, and for the missed visit." Edwards then informed Plaintiff that Defendant was investigating the November 14 incident.

35. On or around December 9, 2020, Defendant suspended Plaintiff.

36. On or around December 10, 2020, Edwards texted Plaintiff and stated "Can you please email me a statement about who was with you in the car when you made that

patient visit on November 14." Plaintiff responded that she would email her a statement but that she was "en route to JFK and I had not picked up my family yet." Edwards responded, "I was told you had family in the car with you". Plaintiff sent Edwards a statement via email shortly thereafter stating that she did not have any other person in the car with her at the time she stopped by the patient's house on November 14, 2020.

37. Throughout Plaintiff's suspension, Plaintiff continued to receive calls from Defendant's on-call service, and as such she forwarded all calls received to Gleason and Edwards.

38. On or around December 17, 2021, Plaintiff received numerous calls from Defendant's on-call service, which she forwarded each to Gleason and Edwards as well.

39. On the same date shortly thereafter, Plaintiff received a text from Edwards requesting her to log into a virtual meeting at 1:00 pm that day stating it was a call with Edwards, Gleason, and human resources. Edwards was in attendance at said meeting, along with Defendant Human Resources employee Jessica Ferdland. At said meeting, Defendant stated, "we are going to have to let you go for" reasoning that it was poor judgment referring to the November 14 incident.

40. Ferdland asked Plaintiff if she had any questions, to which Plaintiff stated "I cannot believe this. You are throwing away good talent and a valuable employee, during this time when we need staff" (referring to the Defendant and nursing industry being short staffed during the time of COVID).

41. Defendant replaced Plaintiff with an existing employee Jenna Aghia ("Aghia"). Aghia is Caucasian, in her 30's, a Physical Therapist, and has received significant discipline throughout her employment with Defendant.

7

42. Defendant discriminated against Plaintiff in the terms and conditions of Plaintiff's employment on account of race, her age, and associational disability / failing to accommodate.

43. Any and all reasons Defendant has proffered for its adverse employment action against Plaintiff are false and/or pretext to mask its unlawful discriminatory intent.

**COUNT ONE:   DISABILITY DISCRIMINATION – C.G.S. § 46a-60(b)(1)**

44. All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

45. Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

46. Plaintiff suffered associational disability within the meaning of the Connecticut Fair Employment Practices Act.

47. Defendant discriminated against Plaintiff in the terms and conditions of Plaintiff's employment on account of her associational disability.

48. Defendant failed to accommodate Plaintiff's associational disability, despite there being reasonable accommodations available which would not have constituted an undue hardship on Defendant.

49. Defendant subjected Plaintiff to a pervasive and continuing course of discriminatory comments and conduct which had the purpose or effect of substantially interfering with Plaintiff's work performance and/or the creation of an intimidating, hostile, or offensive work environment.

50. Defendant subjected Plaintiff to adverse employment action, motivated by Plaintiff's associational disability.

51. As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT TWO:    AGE DISCRIMINATION – C.G.S. § 46a-60(b)(1)**

52. All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

53. Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

54. Defendant discriminated against Plaintiff in the terms and conditions of Plaintiff's employment on account of age.

55. Defendant subjected Plaintiff to a pervasive and continuing course of discriminatory comments and conduct which had the purpose or effect of substantially interfering with Plaintiff's work performance and/or the creation of an intimidating, hostile, or offensive work environment.

56. Defendant subjected Plaintiff to adverse employment action, motivated by Plaintiff's age.

57. As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT THREE:    RACE DISCRIMINATION – C.G.S. § 46a-60(b)(1)**

58. All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

59. Defendant is an "employer" within the meaning of the Connecticut Fair Employment Practices Act.

60. Defendant discriminated against Plaintiff in the terms and conditions of Plaintiff's employment on account of race.

61. Defendant subjected Plaintiff to a pervasive and continuing course of discriminatory comments and conduct which had the purpose or effect of substantially interfering with Plaintiff's work performance and/or the creation of an intimidating, hostile, or offensive work environment.

62. Defendant subjected Plaintiff to adverse employment action, motivated by Plaintiff's race.

63. As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT FOUR:      FMLA INTERFERENCE – 29 U.S.C. § 2612 ET SEQ.**

64. All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

65. Defendant is an "employer" within the meaning of the Family and Medical Leave Act ("FMLA").

66. Plaintiff was an eligible employee within the meaning of the FMLA.

67. Defendant was aware that Plaintiff's family medical condition(s) constituted a "serious medical condition" within the meaning of the FMLA.

68. Defendant interfered with Plaintiff's rights under the FMLA in one or more of the following ways:

a. It failed to notify her that she was an eligible employee under the FMLA upon his request for qualifying leave in violation of 29 C.F.R. §825.300(b)(1);

b. It failed to count her leave as leave under the FMLA or advise her whether her leave was counted as leave under the FMLA;

c. It failed to notify her that she was entitled to a protected leave under the FMLA;

d. It failed to inform her what was necessary for her to do in order to secure a protected leave under the FMLA;

e. It failed to provide her with a "Rights and Responsibilities Notice" as required by 29 C.F.R. § 825.300(b)(1);

f. It failed to provide her with a "Designation Notice" as required by 29 C.F.R. § 825.300(d);

g. It failed to provide her with an "Eligibility Notice" as required by 29 C.F.R. § 825.300(b)(1);

h. It failed to restore her to her position following a protected leave under the FMLA.

69. As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT FIVE:    FMLA RETALIATION – 29 U.S.C. § 2612 ET SEQ.**

70. All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

11

71. Defendant is an "employer" within the meaning of the Family and Medical Leave Act ("FMLA").

72. Plaintiff was an eligible employee within the meaning of the FMLA.

73. Defendant was aware that Plaintiff's family medical condition(s) constituted a "serious medical condition" within the meaning of the FMLA.

74. As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

75. Plaintiff engaged in protected activity by exercising or attempting to exercise rights to job-protected medical leave under the FMLA.

76. Defendant retaliated against Plaintiff and subjected Plaintiff to adverse action on account of such protected activity.

77. As a result of Defendant's unlawful conduct, as aforesaid, Plaintiff has sustained lost wages and benefits of employment, has been deprived of the benefits of gainful employment into the future, has sustained substantial emotional distress, and has incurred or will incur attorneys' fees and costs.

**COUNT SIX:** **WRONGFUL TERMINATION IN VIOLATION OF CONN. GEN. STAT § 31-51q**

78. All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

79. The Plaintiff spoke out as a citizen on a matter of public concern when raising issues of fraud in mislabeling of patient visits.

80. The Defendant's termination of Plaintiff's employment is in violation of Conn. Gen. Stat. § 31-51q in that the Defendant terminated the Plaintiff on account of her exercise of her free speech rights under the United States and Connecticut Constitutions on matters of public concern.

81. As a further result of the Defendant's unlawful termination of the Plaintiff's employment, the Plaintiff has suffered emotional distress.

82. As a further result of the Defendant's unlawful termination of the Plaintiff's employment, the Plaintiff has suffered lost wages, lost employment benefits and other consequential damages.

83. As a further result of the Defendant's unlawful termination of the Plaintiff's employment, the Plaintiff has suffered emotional distress.

84. As a further result of the Defendant's unlawful termination of the Plaintiff's employment, the Plaintiff has been forced to expend attorney's fees and costs to secure her rights as guaranteed by Conn. Gen. Stat. § 31-51q.

**COUNT SEVEN:   WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

85. All preceding allegations are hereby repeated and realleged in this Count as if fully set forth herein.

86. The Defendant terminated the Plaintiff in retaliation for exposing the unsafe environment and patient practices at Defendant business.

87. The Defendant's termination of the Plaintiff's employment is in violation of the longstanding public policy mandating a safe work environment and safe work instruments set forth in Conn. Gen. Stat. § 31-49.

88. As a result of the aforementioned conduct of the Defendant, the Plaintiff has suffered a loss of compensation, including, but not limited to, wages and other fringe benefits.

89. Additionally, as a direct and proximate result of the Defendant's actions, as aforesaid, the Plaintiff has suffered emotional distress.

90. Furthermore, as a result of Defendant's aforementioned actions, the Plaintiff has been forced to incur legal fees and costs in order to obtain the rights to which he is entitled.

**WHEREFORE, Plaintiff prays for the following relief:**

1. Money damages;

2. Reinstatement, or in lieu thereof, front pay;

3. Punitive Damages;

4. Liquidated damages;

5. Attorneys' fees and costs of this Action; and

6. All other awardable relief.

                                                    PLAINTIFF,
                                                    MARIA NERON

                                                    BY: _____
                                                  Emanuele R. Cicchiello
                                                  Cicchiello & Cicchiello, LLP
                                                  364 Franklin Avenue
                                                  Hartford, CT 06114
                                                  Phone: 860-296-3457
                                                  Fax: 860-296-0676
                                                  Email: manny@cicchielloesq.com

*A TRUE COPY ATTEST*
*KEITH D. NIZIANKIEWICZ*
*CONNECTICUT STATE MARSHAL*
*INDIFFERENT PERSON*

| | |
|---|---|
| RETURN DATE: MARCH 29, 2022 | SUPERIOR COURT |
| MARIA NERON | J.D. OF NEW HAVEN |
| VS. | AT HAMDEN |
| AMEDISYS HOLDING, L.L.C. | MARCH 3, 2022 |

## **STATEMENT OF AMOUNT IN DEMAND**

The amount in demand exceeds $15,000.00, excluding costs and interests.

PLAINTIFF,
MARIA NERON

BY: _____
Emanuele R. Cicchiello
Cicchiello & Cicchiello, LLP
364 Franklin Avenue
Hartford, CT 06114
Phone: 860-296-3457
Fax: 860-296-0676
Email: manny@cicchielloesq.com

A TRUE COPY ATTEST
_____
KEITH D. NIZIANKIEWICZ
CONNECTICUT STATE MARSHAL
INDIFFERENT PERSON

16

# EXHIBIT 1

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Maria Neron
**COMPLAINANT**

CHRO No. 2230141
vs.                                                                                     EEOC No. 16A202200015

Amedisys Holdings LLC
**RESPONDENT**

<u>RELEASE OF JURISDICTION</u>

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

<u>The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.</u>

**DATE:**    February 23, 2022                    Tanya A. Hughes, Executive Director

Service:
Complainant: m.neron369@gmail.com
Complainant's attorney: manny@cicchielloesq.com
Respondent: indy.edwards@amedisys.com
Respondent's attorney: jfritz@fisherphillips.com